## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ELSA CASTRO and NICK TOSTO,
individuals,                                                    Case No.:

      Plaintiffs,

v.

CAPITAL ONE SERVICES, LLC,
d/b/a CAPITAL ONE BANK (USA), N.A.
a foreign limited liability company,
LEGAL PREVENTION SERVICES, LLC,
a foreign limited liability company,
WALDEN ASSET MANAGEMENT, LLC,
a foreign for-profit corporation, and
EVANS LAW ASSOCIATES, P.C.
a foreign professional corporation,

      Defendants.

_____/

## COMPLAINT

**COME NOW**, Plaintiffs, ELSA CASTRO (hereinafter, "Ms. Castro") and NICK TOSTO (hereinafter, "Mr. Tosto") (hereinafter collectively, "Plaintiffs"), by and through the undersigned counsel and hereby sue Defendants, CAPITAL ONE SERVICES, LLC d/b/a CAPITAL ONE BANK (USA), N.A. (hereinafter, "COS"), LEGAL PREVENTION SERVICES, LLC (hereinafter, "LPS"), WALDEN ASSET MANAGEMENT, LLC (hereinafter, "WAM"), and EVANS LAW ASSOCIATES, P.C. (hereinafter, "ELA") (hereinafter collectively, "Defendants"). In support thereof, Plaintiffs state:

## INTRODUCTION AND PRELIMINARY STATEMENT

This is an action for damages brought by individual consumers for Defendants' violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), the Telephone Consumer Protection Act, 47 United States Code, Section 227

(hereinafter, the "TCPA"), Defendants LPS, WAM, and ELA's violations of the Fair Debt Collection Practices Act, 15 United States Code, Section 1692a, *et seq*. (hereinafter, the "FDCPA"), and for declaratory judgment and injunctive relief in equity.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court arises under 15 United States Code, Section 1692k(d), 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1337, and supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United State Code, Section 1367. Declaratory relief is available pursuant to 28 United States Code, Sections 2201 and 2202.

2.      Venue in this District is proper because Defendants transact business in this District, and the conduct complained of occurred in this District.

3.      At all material times herein, the conduct of Defendants, complained of below, occurs in Pinellas County, Florida.

4.      At all material times herein, Plaintiffs are individuals residing in Pinellas County, Florida.

5.      At all material times herein, COS is a national association that, itself and through its subsidiaries, regularly extends credit cards to consumers in Pinellas County, Florida, and is a person who furnishes information to credit reporting agencies as provided in the FCRA, 15 United States Code, Section 1681s-2.

6.      At all material times herein, LPS is a limited liability company engaged in business in Florida with its principal place of business located at 485 Cayuga Road Hangar Bay 4-2, Cheektowaga, New York 14225.  LPS's principal purpose is the collection of debts using interstate mail and telephone, and LPS regularly attempts to collect debts alleged to be due to another.

7.     At all material times herein, WAM is a for-profit corporation engaged in business in Florida with its principal place of business located at 1 Beacon Street, Boston, Massachusetts 02108.  WAM's principal purpose is the collection of debts using intestate mail and telephone, and WAM regularly attempts to collect debts alleged to be due to another.

8.     At all material times herein, ELA is a professional corporation engaged in business in Florida with its principal place of business located at 3842 Harlem Road, Suite 400-329, Cheektowaga, New York, 14215.  ELA's principal purpose is the collection of debts using interstate mail and telephone, and ELA regularly attempts to collect debts alleged to be due to another.

## GENERAL ALLEGATIONS

9.     At all material times herein, COS is a "creditor" as defined by Florida Statutes, Section 559.55(5).

10.    At all material times herein, LPS is a "debt collector" as defined by 15 United States Code, Section 1692a(6) and Florida Statutes, Section 559.55(7).

11.    At all material times herein, WAM is a "debt collector" as defined by 15 United States Code, Section 1692a(6) and Florida Statutes, Section 559.55(7).

12.    At all material times herein, ELA is a "debt collector" as defined by 15 United States Code, Section 1692a(6) and Florida Statutes, Section 559.55(7).

13.    At all material times herein, Plaintiffs are each a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8) and 15 United States Code, Section 1692a(3).

14.    At all material times herein, each Defendant attempts to collect a debt, specifically an amount allegedly due for medical services rendered in or about July 2009, referenced by the

account number ending in -6273 and alleged case numbers ending in -22, -23, and -34 (hereinafter, the "Debt").

15.     At all material times herein, LPS, WAM, and ELA, on COS's behalf—and with COS's consent, knowledge, and approval—attempted to collect the Debt and placed interstate calls while engaging in a business the principal purpose of which is the collection of debts allegedly due another.  LPS, WAM, and ELA are also entities who regularly collect or attempt to directly or indirectly collect debts owed or due, or asserted to be owed or due, another.

16.     At all material times herein, the Debt is a consumer debt, an obligation resulting from a transaction for goods or services and was incurred primarily for personal, household, or family use.

17.     At all material times herein, Defendants are each a "person" subject to Florida Statutes, Section 559.72.  *See* Florida Statutes, Section 559.55(5); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

18.     At all material times herein, Defendants' conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2) and 15 United States Code, Section 1692a(2).

19.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

20.     All necessary conditions precedent to the filing of this action occurred or have been waived by Defendants.

## FACTUAL ALLEGATIONS

21.     LPS, WAM, and ELA's telephone calls, as more specifically alleged below, were

4

placed to Ms. Castro's cellular telephone number ending in -4836 (hereinafter, "Ms. Castro's Cellular Telephone") and Mr. Tosto's cellular telephone number ending in -7126 (hereinafter, "Mr. Tosto's Cellular Telephone") (hereinafter collectively, the "Cellular Telephones") using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

22.     Ms. Castro is the owner, regular user, and possessor of a Cellular Telephone with the assigned number ending in -4836.

23.     Mr. Tosto, Ms. Castro's husband, is the owner, regular user, and possessor of a Cellular Telephone with the assigned number ending in -7126.

24.     At no time herein did Defendants possess either Plaintiff's prior express consent to call Plaintiffs' Cellular Telephones using an ATDS, a PTDS, or an APV.

25.     If Defendants contend they possessed such consent, Plaintiff revoked such consent when Plaintiffs demanded that Defendant cease calling Plaintiffs' Cellular Telephones.

26.     Further, if Defendants contend they possessed such consent to call Mr. Tosto's Cellular Telephone, Ms. Castro and Mr. Tosto did not know one another at the time Ms. Castro incurred the Debt, and at no time herein did Ms. Castro provide Mr. Tosto's name or contact information to LPS.

27.     Additionally, if Defendants contend the below-referenced phone calls were placed for "informational purposes only," they nevertheless lacked the required prior express written consent necessary to place such informational calls to Plaintiffs' Cellular Telephones using an ATDS, a PTDS, or an APV.

28.     In or about July 2009, Ms. Castro allegedly incurred the Debt as a result of medical services rendered to her.

29.     As of July 2009, Ms. Castro and Mr. Tosto did not know one another, and Ms. Castro did not provide Mr. Tosto's name or contact information at that time.

30.     Prior to May 6, 2010, the Debt went into default.

31.     Pursuant to Florida Statutes, Section 95.11(2), the statute of limitations to take legal action on the Debt is five (5) years from the date of default.  As a result, Defendants could not successfully sue Plaintiffs for the Debt or legally take legal action to collect the Debt after approximately May or June 2015.

32.     On or about May 6, 2015, at approximately 3:36 p.m. EST, LPS, on COS's behalf—and with COS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

33.     LPS placed the immediately-aforementioned call from telephone number 866.413.2918 in an attempt to collect the Debt.

34.     On or about May 7, 2015, at approximately 4:21 p.m. EST, LPS, on COS's behalf—and with COS's consent, knowledge, and approval—called Mr. Tosto's Cellular Telephone using an ATDS, a PTDS, or an APV.

35.     LPS placed the immediately-aforementioned call from telephone number 866.413.2918 in an attempt to collect the Debt.

36.     During the immediately-aforementioned call, LPS's employee or representative, "Alician," left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call.

37.     On or about May 11, 2015, at approximately 12:49 p.m. EST, LPS, on COS's behalf—and with COS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

38.     LPS placed the immediately-aforementioned call from telephone number 866.413.2918 in an attempt to collect the Debt.

39.     On or about May 14, 2015, at approximately 9:54 a.m. EST, LPS, on COS's behalf—and with COS's consent, knowledge, and approval—called Mr. Tosto's Cellular Telephone using an ATDS, a PTDS, or an APV.

40.     LPS placed the immediately-aforementioned call in an attempt to collect the Debt.

41.     During the immediately-aforementioned call, LPS's employee or representative, "Alician," left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call prior to LPS "implementing any form of recourse at the end of business day today."

42.     On or about May 14, 2015, at approximately 12:03 p.m. EST, LPS, on COS's behalf—and with COS's consent, knowledge, and approval—called Mr. Tosto's Cellular Telephone using an ATDS, a PTDS, or an APV.

43.     LPS placed the immediately-aforementioned call from telephone number 888.907.1262 in an attempt to collect the Debt.

44.     During the immediately-aforementioned call, LPS's employee or representative left a voicemail message for Ms. Castro, requesting that Ms. Castro return LPS's call.

45.     On or before August 2, 2015, LPS turned the Debt over to WAM for collection from Plaintiffs.

46.     On or about August 2, 2015, at approximately 1:52 p.m. EST, WAM, on COS's behalf—and with COS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

47.     WAM placed the immediately-aforementioned call from telephone number 888.786.7511 in an attempt to collect the Debt.

48.     During the immediately-aforementioned call, WAM's employee or representative, "Eric Simmons," left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call.

49.     On or about August 3, 2015, at approximately 9:15 a.m. EST, WAM, on COS's behalf—and with COS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

50.     WAM placed the immediately-aforementioned call from telephone number 888.786.7511 in an attempt to collect the Debt.

51.     During the immediately-aforementioned call, WAM's employee or representative, Eric Simmons, left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call, and stating that "all documents will be sent to [Ms. Castro's] place of employment for process."

52.     On or about August 3, 2015, at approximately 10:37 a.m. EST, WAM, on COS's behalf—and with COS's consent, knowledge, and approval—again called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

53.     WAM placed the immediately-aforementioned call from telephone number 888.786.7511 in an attempt to collect the Debt.

54.     During the immediately-aforementioned call, WAM's employee or representative, Ryan Taylor, left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call, and stating that his "client gave specific instructions how to handle this matter" and stating "the call has to happen today."

55.     On or about September 2, 2015, Plaintiffs retained Leavengood, Dauval, Boyle & Meyer, P.A. (hereinafter "Undersigned Counsel") for representation with respect to the Debt.

56.     On or about September 2, 2015, at approximately 1:52 p.m. EST, WAM, on COS's behalf—and with COS's consent, knowledge, and approval—called Mr. Tosto's Cellular Telephone using an ATDS, a PTDS, or an APV.

57.     WAM placed the immediately-aforementioned call from telephone number 888.786.7511 in an attempt to collect the Debt.

58.     During the immediately-aforementioned call, despite Mr. Castro and Mr. Tosto not knowing one another in July 2009 when Ms. Castro incurred the Debt, Mr. Tosto spoke with WAM's employee or representative, Eric Simmons, in which Mr. Simmons advised Mr. Tosto that Ms. Castro provided Mr. Tosto's Cellular Telephone number as a reference when she incurred the Debt.  Mr. Tosto demanded that WAM immediately cease calling his Cellular Telephone.

59.     On or about September 3, 2015, at approximately 9:17 a.m. EST, WAM, on COS's behalf—and with COS's consent, knowledge, and approval—called Mr. Tosto's Cellular Telephone using an ATDS, a PTDS, or an APV.

60.     WAM placed the immediately-aforementioned call from telephone number 888.786.7511 in an attempt to collect the Debt.

61.     During the immediately-aforementioned call, WAM's employee or representative, Eric Simmons, left a voicemail message for Ms. Castro stating that he was calling regarding "case number 112134," that this was Ms. Castro's "final notice," that Ms. Castro's "documentation is looking to be finalized" and will be sent "to [Ms. Castro's] current place of employment," and further advising that "if you would like to avoid this process you must contact our office immediately."

62. On or about September 8, 2015, at approximately 12:32 p.m. EST, WAM, on COS's behalf—and with COS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

63. WAM placed the immediately-aforementioned call from telephone number 888.786.7511 in an attempt to collect the Debt.

64. During the immediately-aforementioned call, Ms. Castro spoke with WAM's employee or representative, "Vince Dicenzo" (hereinafter, "Mr. Dicenzo"), in which Ms. Castro demanded that WAM immediately cease calling Ms. Castro's Cellular Telephone *at least* five (5) times.

65. Despite Ms. Castro's immediately-aforementioned demands, Mr. Dicenzo demanded that Ms. Castro verify her personal information. When Ms. Castro refused, Mr. Dicenzo recited Ms. Castro's full social security number and address.

66. Further, during the above-referenced call, Mr. Dicenzo stated that he was "from the legal department" and that "a complaint [would be] filed in court."

67. On or before September 14, 2015, LPS, turned the Debt over to ELA for collection from Plaintiffs.

68. On or about September 14, 2015, at approximately 9:51 a.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Mr. Tosto's Cellular Telephone using an ATDS, a PTDS, or an APV.

69. ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

70.     On or about September 14, 2015, at approximately 9:52 a.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Mr. Tosto's Cellular Telephone using an ATDS, a PTDS, or an APV.

71.     ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

72.     During the immediately-aforementioned call, ELA's employee or representative, "Stephania," left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call.

73.     On or about September 23, 2015, at approximately 1:03 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Mr. Tosto's Cellular Telephone using an ATDS, a PTDS, or an APV.

74.     ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

75.     On or about September 30, 2015, at approximately 2:39 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

76.     ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

77.     During the immediately-aforementioned call, ELA's employee or representative, Stephania, left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call.

78.     Following the immediately-aforementioned call, Ms. Castro called ELA and spoke with Stephania, in which Stephina advised Ms. Castro that ELA represented LPS.  Ms. Castro demanded that ELA immediately cease calling her Cellular Telephone.

79.    On or about October 23, 2015, at approximately 1:03 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

80.    ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

81.    During the immediately-aforementioned call, ELA's employee or representative left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call.

82.    On or about October 29, 2015, at approximately 3:39 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

83.    ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

84.    During the immediately-aforementioned call, ELA's employee or representative left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call.

85.    On or about October 29, 2015, at approximately 3:39 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Mr. Tosto's Cellular Telephone using an ATDS, a PTDS, or an APV.

86.    ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

87.    During the immediately-aforementioned call, Mr. Tosto spoke with ELA's employee or representative and again demanded that ELA immediately cease calling his Cellular Telephone.

88.     Further, in response to Mr. Tosto's immediately-aforementioned demand that all calls to his Cellular Telephone immediately cease, ELA's employee or representative stated that he was unable to remove Mr. Tosto from ELA's call lists "because [Mr. Tosto's Cellular Telephone number] was a contact from the file."

89.     Additionally, during the immediately-aforementioned call, one of ELA's employees or representative refused to identify himself to Mr. Tosto.

90.     On or about November 12, 2015, at approximately 12:45 p.m. EST, WAM, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

91.     WAM placed the immediately-aforementioned call in an attempt to collect the Debt.

92.     During the immediately-aforementioned call, Ms. Castro spoke with WAM's employee or representative, and demanded that WAM immediately cease calling her Cellular Telephone.

93.     In response to Plaintiff's above-referenced demand for the calls to cease, WAM's employee or representative said that he would be calling again later.

94.     Further, during the immediately-aforementioned call, WAM's employee or representative refused Ms. Castro's request for WAM to send her documentation verifying the Debt.

95.     Additionally, during the immediately-aforementioned call, Ms. Castro asked how WAM obtained her Cellular Phone number, to which WAM's employee or representative replied that WAM obtained Ms. Castro's Cellular Telephone number through a skip trace.

96.     On or about November 12, 2015, at approximately 4:26 p.m. EST, WAM, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

97.     WAM placed the immediately-aforementioned call from telephone number 888.786.7511 in an attempt to collect the Debt.

98.     On or about November 24, 2015, at approximately 12:00 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

99.     ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

100.    During the immediately-aforementioned call, ELA's employee or representative left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call.

101.    On or about November 24, 2015, at approximately 12:30 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

102.    ELA placed the immediately-aforementioned call in an attempt to collect the Debt.

103.    During the immediately-aforementioned call, ELA left a prerecorded voicemail message.

104.    On or about December 7, 2015, at approximately 1:09 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

105.    ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

106.    During the immediately-aforementioned call, ELA's employee or representative left a prerecorded voicemail message.

107.    On or about December 7, 2015, at approximately 3:13 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

108.    ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

109.    During the immediately-aforementioned call, ELA left a prerecorded voicemail message.

110.    On or about December 7, 2015, at approximately 5:01 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

111.    ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

112.    During the immediately-aforementioned call, ELA's employee or representative left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call.

113.    On or about December 8, 2015, Undersigned Counsel sent COS, LPS, WAM, and ELA each a Fax of Representation and letter disputing the validity of the Debt and demanding that all communications with Plaintiffs cease, and instead be directed to Undersigned Counsel's office (hereinafter, "Fax of Representation").  Please see attached a true and correct copy of the Fax of Representation and confirmation sheet labeled as Exhibit "A."

114.    After several unsuccessful attempts at sending Undersigned Counsel's Fax of Representation to ELA, Undersigned Counsel called ELA, and ELA confirmed receipt of the Fax of Representation from its client, LPS.

115.    On or about December 8, 2015, at approximately 12:15 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

116.    ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

117.    During the immediately-aforementioned call, ELA's employee or representative left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call.

118.    Each of the below-referenced calls were placed despite Defendants possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiffs with respect to the Debt and possessing Undersigned Counsel's contact information.

119.    On or about December 15, 2015, at approximately 12:07 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

120.    ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

121.    During the immediately-aforementioned call, ELA's employee or representative left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call.

122.    On or about December 22, 2015, at approximately 12:51 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

123.    ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

124.    During the immediately-aforementioned call, ELA's employee or representative left a voicemail message for Ms. Castro, requesting that Ms. Castro return the call.

125.    On or about December 23, 2015, at approximately 12:35 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

126.    ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

127.    During the immediately-aforementioned call, Ms. Castro attempted to answer the call, but upon answering received a prerecorded voicemail message.

128.    On or about January 13, 2016, at approximately 4:47 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

129.    ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

130.    During the immediately-aforementioned call, Ms. Castro attempted to answer the call, but upon answering received a prerecorded voicemail message.

131.    On or about January 15, 2016, at approximately 12:24 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

132.    ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

133.     During the immediately-aforementioned call, Ms. Castro attempted to answer the call, but upon answering received a prerecorded voicemail message.

134.     On or about January 20, 2016, at approximately 3:30 p.m. EST, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Ms. Castro's Cellular Telephone using an ATDS, a PTDS, or an APV.

135.     ELA placed the immediately-aforementioned call from telephone number 716.362.1543 in an attempt to collect the Debt.

136.     During the immediately-aforementioned call, Ms. Castro attempted to answer the call, but upon answering received a prerecorded voicemail message.

137.     Plaintiffs have not been able, due to both professional and personal commitments, as well as the continued and increasing stress associated with the barrage of Debt collection calls, to record the specifics (as done above) on each any every call made to Plaintiffs.  Plaintiffs assert, however, that the above-referenced calls are but a sub-set of the calls placed in violation of the TCPA.  Further, Defendants are in the best position to determine and ascertain the number and methodology of calls placed to Plaintiffs.

138.     As a direct result of each Defendant's actions, Plaintiffs each suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that their repeated demands for the calls to cease were wholly ineffective, that Ms. Castro's dispute of the Debt was wholly ineffective, and that the frequent, repeated direct debt collection attempts would simply have to be endured.

139.     Plaintiffs retained Undersigned Counsel for the purpose of pursuing this matter against Defendants, and Plaintiffs are obligated to pay their attorneys a reasonable fee for their services.

140.    Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, actual damages, punitive damages, and an award of attorneys' fees and costs to Plaintiffs, should Plaintiffs prevail in this matter against each Defendant.

141.    United States Code, Title 15, Section 1692k provides for the award of up to $1,000.00 statutory damages, actual damages, costs, and an award of attorney's fees to Plaintiffs, should Plaintiffs prevail in this matter against Defendants LPS, WAM, and ELA.

142.    United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call placed using any automatic telephone dialing system or an artificial or pre-recorded voice to Plaintiffs' Cellular Telephones in violation of the TCPA or the regulations proscribed thereunder.

143.    Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call placed using any automatic telephone dialing system or an artificial or prerecorded voice to Plaintiffs' Cellular Telephones in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

144.    As of the date of this complaint, Defendants have not initiated a law suit in an effort to collect the Debt. Likewise, no final judgment regarding the Debt has been obtained by, or transferred to, Defendants.

### COUNT ONE:
### UNLAWFUL DEBT COLLECTION PRACTICE –
### VIOLATION OF FLORIDA STATUTES, SECTION 559.72(4)

Plaintiffs re-allege paragraphs one (1) through one-hundred forty-four (144) as if fully restated herein and further state as follows:

145.    Defendants COS and WAM are each subject to, and each violated the provisions of, Florida Statutes, Section 559.72(4) by communicating or threatening to communicate with Ms.

Castro's employer without Ms. Castro's consent or first obtaining a final judgment against Ms. Castro.

146.    Specifically, during *at least* two (2) of its calls to Ms. Castro, WAM threatened to send documentation regarding the Debt and WAM's collection thereof to Ms. Castro's place of employment, without first obtaining a final judgment against Ms. Castro, and without first obtaining Ms. Castro's express written consent to contact Ms. Castro's employer.  WAM's actions stated herein constitute indirect communication by COS.

147.    As a direct and proximate result of COS and WAM's actions, Ms. Castro sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(7)**

Plaintiffs re-allege paragraphs one (1) through one-hundred forty-four (144) as if fully restated herein and further state as follows:

148.    Defendants are each subject to, and each violated the provisions of, Florida Statutes, Section 559.72(7) by collecting consumer Debt from Plaintiffs through means which can reasonably be expected to abuse or harass Plaintiffs.

149.    Specifically, at no time herein did any Defendant possess either Plaintiff's prior express written consent to call Plaintiffs' Cellular Telephones using an ATDS, a PTDS, or an APV.

150.    In fact, during one of its many debt collection calls, WAM explicitly informed Ms. Castro that it obtained her Cellular Phone number using a skip trace.

151.    Despite lacking the above-referenced consent, WAM, on COS's behalf—and with COS's consent, knowledge, and approval—called Plaintiffs' Cellular Phones *at least* eight (8) times using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

152.    Further, WAM, on COS's behalf—and with COS's consent, knowledge, and approval—placed *at least* three (3) of the above-referenced calls to Plaintiffs' Cellular Telephones after both Plaintiffs revoked any purported consent COS and its agents may assert to call Plaintiffs' Cellular Telephones.

153.    Additionally, during one of the above-referenced calls, WAM's employee or representative refused Ms. Castro's request that WAM send Ms. Castro documentation of the Debt.

154.    Moreover, on the immediately-aforementioned call, WAM's employee or representative also refused Ms. Castro's request that the calls cease, instead stating that he would call again later.

155.    Additionally, despite lacking Plaintiffs' prior express written consent to be called on their Cellular Telephones, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—called Plaintiffs' Cellular Telephones *at least* twenty (20) times using an ATDS, a PTDS, or an APV, in an attempt to collect the Debt.

156.    Further, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—placed *at least* nineteen (19) of the above-referenced calls to Plaintiffs' Cellular Telephones after both Plaintiffs revoked any alleged consent COS and its agents may assert to call Plaintiffs' Cellular Phones.

157.    Even further, ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—placed *at least* seven (7) of the above-referenced calls to Ms. Castro's Cellular Telephone despite possessing actual knowledge that Undersigned Counsel represented Plaintiffs with respect to the Debt.

158.    Additionally, during one of the above-referenced calls, an ELA employee or representative informed Mr. Tosto that he was unable to comply with Mr. Tosto's demand that the

collection calls to Mr. Tosto's Cellular Phone cease.

159.     Later on the immediately-aforementioned call, another ELA employee or representative refused to identify himself upon Mr. Tosto's request.

160.     Each Defendant's willful and flagrant violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

161.     As a direct and proximate result of each Defendant's actions, Plaintiffs sustained damages as defined by Florida Statutes, Section 559.77.

### COUNT THREE:
### UNLAWFUL DEBT COLLECTION PRACTICE –
### VIOLATION OF FLORIDA STATUTES, SECTION 559.72(9)

Plaintiffs re-allege paragraphs one (1) through one-hundred forty-four (144) as if fully restated herein and further state as follows:

162.     Defendants COS, LPS, and WAM are subject to, and each violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the Debt with knowledge that the Debt is not legitimate or asserting the existence of the legal right with the knowledge that the right does not exist.

163.     Specifically, LPS, on COS's behalf—and with COS's consent, knowledge, and approval—implied its intention to take legal action against Ms. Castro if she refused to comply with its debt collection attempts and on *at least* one occasion advising her to return their call prior to LPS "implementing any form of recourse at the end of business day today."

164.     In addition, during one of its many debt collection calls, WAM's employee or representative, on COS's behalf—and with COS's consent, knowledge, and approval—stated in a voicemail message that "the call has to happen today."

22

165.   Even further, on a subsequent debt collection call, WAM's employee or representative, on COS's behalf—and with COS's consent, knowledge, and approval—stated to Ms. Castro that he was "from the legal department" and that "a complaint will be filed in court."

166.   WAM designed the foregoing statements to lead the least-sophisticated consumer to believe that she must act immediately, and that failing to do so will result in legal action that WAM does not possess the right to take.

167.   Prior to May 6, 2010, the Debt went into default.

168.   Pursuant to Florida Statutes, Section 95.11(2), the statute of limitations to take legal action on the Debt is five (5) years from the date of default.  As a result, Defendants could not successfully sue Plaintiffs for the Debt or legally take legal action to collect the Debt after approximately May or June 2015.

169.   Defendants attempted to collect a Debt by consciously and knowingly giving the impression to Ms. Castro that the Debt is legally enforceable, when Defendants knew it was, in fact, not.

170.   As a direct and proximate result of each Defendant's actions, Ms. Castro sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT FOUR:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(15)**

Plaintiffs re-allege paragraphs one (1) through one-hundred forty-four (144) as if fully restated herein and further state as follows:

171.   Defendant ELA is subject to, and each violated the provisions of, Florida Statutes, Section 559.72(15) for it's employee's or representative's refusal to provide adequate

identification of himself, or his employer or entity he represents or works for, when asked to do so by Plaintiff.

172.    Specifically, on or about October 29, 2015, ELA's employee or representative refused to identify himself to Mr. Tosto in response to Mr. Tosto's request that ELA's employee or representative provide his name.

173.    As a direct and proximate result of Defendant's actions, Mr. Tosto sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT FIVE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)**

Plaintiffs re-allege paragraphs one (1) through one-hundred forty-four (144) as if fully restated herein and further state as follows:

174.    Defendants COS, LPS, and ELA are each subject to, and each violated the provisions of, Florida Statutes, Section 559.72(18) by intentionally and repeatedly communicating directly with Ms. Castro after receiving notice that Ms. Castro was represented by legal counsel with respect to the underlying Debt.

175.    Specifically, COS, LPS, and ELA each received actual notice and possessed actual knowledge of Undersigned Counsel's representation of Ms. Castro with respect to the Debt, possessed actual knowledge of Undersigned Counsel's contact information, and were advised that all direct communication with Ms. Castro with respect to the Debt must cease.

176.    Despite possessing the above-referenced knowledge, ELA, on COS's and LPS's Behalf—and with COS's and LPS's consent, knowledge, and approval—directly called Ms. Castro *at least* seven (7) more times in an attempt to collect the Debt.

177.     As a direct and proximate result of COS's, LPS's and ELA's actions, Ms. Castro

sustained damages as defined by Florida Statutes, Section 559.77.

## COUNT SIX:
## FAIR DEBT COLLECTION PRACTICES ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1692c(a)(2)

Plaintiffs re-allege paragraphs one (1) through one-hundred forty-four (144) as if fully

restated herein and further state as follows:

178.     Defendant ELA and LPS are each subject to, and each violated the provisions of,

15 United States Code, Section 1692c(a)(2) by communicating with Ms. Castro despite Defendant

possessing knowledge that Ms. Castro was represented by Undersigned Counsel with respect to

the Debt and possessing knowledge of Undersigned Counsel's contact information.

179.     Specifically, LPS and ELA received actual notice and possessed actual knowledge

of Undersigned Counsel's representation of Ms. Castro with respect to the Debt, possessed actual

knowledge of Undersigned Counsel's contact information, and were advised that all direct

communication with Ms. Castro with respect to the Debt must cease.

180.     Despite having the above-referenced knowledge, ELA, on LPS's behalf—and with

LPS's consent, knowledge, and approval—directly called Ms. Castro *at least* seven (7) more times

in an attempt to collect the Debt.

181.     As a direct and proximate result of ELA's actions, Ms. Castro sustained damages

as defined by 15 United States Code, Section 1692k.

## COUNT SEVEN:
## FAIR DEBT COLLECTION PRACTICES ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1692d and 1692d(6)

Plaintiffs re-allege paragraphs one (1) through one-hundred forty-four (144) as if fully

restated herein and further state as follows:

182.    Defendants WAM, LPS, and ELA are each subject to, and each violated the provisions of 15 United States Code, Section 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiffs in connection with the collection of the Debt.

183.    Specifically, WAM, LPS, and ELA did not possess possessed Plaintiffs' prior express consent to call Plaintiffs' Cellular Telephones using an ATDS, a PTDS, or an APV at any time.

184.    Despite lacking the above-referenced consent, WAM called Plaintiffs' Cellular Telephones *at least* eight (8) times using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

185.    Further, WAM placed *at least* three (3) of the above-referenced calls to Plaintiffs' Cellular Telephones after both Plaintiffs revoked any purported consent COS and its agents allege to call Plaintiffs' Cellular Telephones.

186.    During one of the above-referenced calls, WAM's employee or representative refused Ms. Castro's request that WAM send Ms. Castro documentation of the Debt.

187.    In addition, during the immediately-aforementioned call, WAM's employee or representative also refused Ms. Castro's request that the calls cease, instead stating that he would call again later.

188.    Despite lacking Plaintiffs' prior express consent for calls to their Cellular Telephones, ELA, on LPS's behalf—and with LPS's consent, knowledge, and approval —called Plaintiffs' Cellular Telephones *at least* twenty (20) times using an ATDS, a PTDS, or an APV, in an attempt to collect the Debt.

189.    Specifically, ELA, on LPS's behalf—and with LPS's consent, knowledge, and

approval—placed *at least* nineteen (19) of the above-referenced calls to Plaintiffs' Cellular Telephones after both Plaintiffs revoked any purported consent, to the extent it ever existed, for COS and its agents allege to call Plaintiffs' Cellular Telephones.

190.    Further, ELA, on LPS's behalf—and with LPS's consent, knowledge, and approval—placed *at least* seven (7) of the above-referenced calls to Ms. Castro's Cellular Telephone after possessing knowledge that Undersigned Counsel represented Plaintiffs with respect to the Debt.

191.    Additionally, during one of the above-referenced calls, ELA's employee or representative informed Mr. Tosto that he was unable to comply with Mr. Tosto's demand that the collection calls to Mr. Tosto's Cellular Telephone cease.

192.    During the immediately-aforementioned call, another ELA employee or representative refused to provide Mr. Tosto with his name upon being asked for the same.

193.    As a direct and proximate result of WAM and ELA's actions, Plaintiffs sustained damages as defined by 15 United States Code, Section 1692k.

## COUNT EIGHT:
### FAIR DEBT COLLECTION PRACTICES ACT –
### VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e, e(2)(A), e(10)

Plaintiffs re-allege paragraphs one (1) through one-hundred forty-four (144) as if fully restated herein and further state as follows:

194.    Defendants LPS, WAM, and ELA are each subject to, and each violated the provisions of, 15 United States Code, Sections 1692e, 1692e(2)(A), and 1692e(10) by using false, deceptive, or misleading representations or means in connection with the collection of the Debt.

195.    Specifically, LPS asserted its intention to take legal action against Ms. Castro if she refused to comply with its debt collection attempts, on at least one occasion advising her to return

their call prior to LPS "implementing any form of recourse at the end of business day today."

196.    In addition, during one of its many debt collection calls, WAM's employee or representative stated in a voicemail message that "the call has to happen today."

197.    Even further, on a subsequent debt collection call, WAM's employee or representative stated to Ms. Castro that he was "from the legal department" and that "a complaint will be filed in court."

198.    WAM designed the foregoing statements to lead the least-sophisticated consumer to believe that she must act immediately, and that failing to do so will result in legal action that WAM does not possess the right to take.

199.    Prior to May 6, 2010, the Debt went into default.

200.    Pursuant to Florida Statutes, Section 95.11(2), the statute of limitations to take legal action on the Debt is five (5) years from the date of default.  As a result, Defendants could not successfully sue Plaintiffs for the Debt or legally take legal action to collect the Debt after approximately May or June 2015.

201.    At all material times herein, LPS, WAM, and ELA attempted to collect a Debt by consciously and knowingly giving the impression to Ms. Castro that the Debt was legally enforceable, when LPS, WAM, and ELA know it was not.

202.    As a direct and proximate result of LPS, WAM, and ELA's actions, Ms. Castro sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT NINE:**
**TELEPHONE CONSUMER PROTECTION ACT-**
**VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**

Plaintiffs re-allege paragraphs one (1) through one-hundred forty-four (144) as if fully restated herein and further state as follows:

28

203.    Defendants are subject to, and each violated the provisions of, 47 United States Code, Section 227 (b)(1)(A) by using an automatic telephone dialing system, a predictive telephone dialing system, or an artificial or pre-recorded voice to call a telephone number assigned to a cellular telephone service without Plaintiffs' prior express consent.

204.    LPS, on COS's behalf—and with COS's consent, knowledge, and approval—used an automatic telephone dialing system or an artificial or pre-recorded voice to call Plaintiffs' Cellular Telephone *at least* five (5) times in its attempt to collect the Debt.

205.    WAM, on COS's behalf—and with COS's consent, knowledge, and approval—used an automatic telephone dialing system or an artificial or pre-recorded voice to call Plaintiffs' Cellular Telephone *at least* eight (8) times in its attempt to collect the Debt.

206.    ELA, on COS's and LPS's behalf—and with COS's and LPS's consent, knowledge, and approval—used an automatic telephone dialing system or an artificial or pre-recorded voice to call Plaintiffs' Cellular Telephone *at least* twenty (20) times in its attempts to collect the Debt.

207.    At no time did any Defendant possess either Plaintiffs' prior express consent to call Plaintiffs' Cellular Telephones.

208.    Further, if Defendants contend they possessed such consent, such consent was revoked when Plaintiffs demanded that Defendants cease calling Plaintiffs' Cellular Telephones.

209.    Additionally, if Defendants contend the referenced phone calls were placed for "informational purposes only," Defendants nevertheless lacked the required prior express consent necessary to place such informational calls to Plaintiffs' Cellular Telephones using an ATDS, a PTDS, or an APV.

210.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered:

a.      the periodic loss of their Cellular Telephone service;

b.      lost material costs associated with the use of peak time Cellular Telephone minutes allotted under their Cellular Telephone service contracts; and

c.      stress, anxiety, loss of sleep, and deterioration of relationships, both personal and professional, as a result of the repeated calls placed in violation of the TCPA.

### COUNT TEN:
### DECLARATORY AND INUNCTIVE RELIEF

Plaintiffs re-allege paragraphs one (1) through one-hundred forty-four (144) as if fully restated herein and further state as follows:

211.    Unless Defendants are immediately enjoined from continuing their attempts to collect the Debt directly from Plaintiffs, Plaintiffs will suffer irreparable injury.

212.    Plaintiffs have a clear legal right to the protections of the FCCPA and TCPA.

213.    Given Defendants' conduct and apparent intention and ability to continue to collect the Debt directly from Plaintiffs in violation of said laws, Plaintiffs have no adequate remedy at law.  Plaintiffs need and are entitled to injunctive relief.

214.    The requested injunction is reasonably necessary to protect the legal rights of Plaintiffs and will have no adverse effect on the public welfare.

### PRAYER FOR RELIEF

**WHEREFORE,** as a direct and proximate result of each Defendant's conduct, Plaintiffs respectfully request:

a.      judgment declaring that Defendants violated the FCCPA and the TCPA;

b.      judgment against Defendants for maximum statutory damages for violations of the FCCPA;

c.      judgment against Defendants for actual damages pursuant to the FCCPA in an amount to be determined at trial;

d.      judgment against Defendants for injunctive relief for Defendants' continued violations of the FCCPA and the TCPA;

e.      judgment against LPS, WAM, and ELA for maximum statutory damages for violations of the FDCPA;

f.      judgment against LPS, WAM, and ELA for actual damages pursuant to the FDCPA in an amount to be determined at trial;

g.      judgment against Defendants for statutory damages in the amount of $500.00 for each of Defendants' telephone calls that violated the TCPA;

h.      judgment against Defendants for treble statutory damages in the amount of up to $1,500.00 for each of Defendants' telephone calls that violated the TCPA for which Defendants acted knowingly and/or willingly;

i.      judgment against Defendants for punitive damages in an amount to be determined at trial;

j.      judgment for an award of Plaintiffs' reasonable attorneys' fees and costs; and

k.      any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiffs hereby give notice to Defendants and demand that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation

as required by law.

Respectfully submitted,

**LEAVENLAW**

/s/ *Aaron M. Swift*
**[X] Aaron M. Swift, Esq., FBN 0093088**
**□ Gregory H. Lercher, Esq., FBN 0106991**
**□ Sara Weiss, Esq., FBN 0115637**
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone:  (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
aswift@leavenlaw.com
glercher@leavenlaw.com
sweiss@leavenlaw.com
*Attorneys for Plaintiffs*