UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELSA CASTRO and NICK TOSTO,
individuals,

    Plaintiffs,                                         Case No.:  8:16-cv-00889-EAK-TGW

v.

CAPITAL ONE SERVICES, LLC,
d/b/a CAPITAL ONE BANK (USA), N.A.
a foreign limited liability company,
LEGAL PREVENTION SERVICES, LLC,
a foreign limited liability company,
WALDEN ASSET MANAGEMENT, LLC,
a foreign for-profit corporation, and
and EVANS LAW ASSOCIATES, P.C.,
a foreign professional corporation,

    Defendants.
_____/

**MOTION FOR FINAL DEFAULT
JUDGMENT AND AWARD OF ATTORNEYS' FEES AND
COSTS AGAINST DEFENDANT, LEGAL PREVENTION SERVICES, LLC**

**COME NOW**, Plaintiffs, ELSA CASTRO (hereinafter, "Castro") and NICK TOSTO (hereinafter, "Tosto") (hereinafter collectively, "Plaintiffs"), by and through their undersigned counsel pursuant to Rule 55 of the Federal Rules of Civil Procedure, and hereby file their Motion for Final Default Judgment and Award of Attorneys' Fees and Costs (hereinafter, "Motion") against Defendant, LEGAL PREVENTION SERVICES, LLC (hereinafter, "LPS").  In support thereof, Plaintiffs state:

    1.    On or about April 14, 2016, Plaintiffs filed their Complaint against Capital One Services, LLC, d/b/a Capital One Bank (USA), N.A. (hereinafter, "COS"), LPS, Walden Asset Management, LLC (hereinafter, "WAM"), and Evans Law Associates, P.C. (hereinafter, "ELA")

1

(hereinafter collectively, "Defendants") alleging violations of the Florida Consumer Collection Practices Act, (hereinafter, "FCCPA"), the Fair Debt Collection Practices Act (hereinafter, "FDCPA"), and the Telephone Consumer Protection Act (hereinafter, "TCPA") for creditor harassment as a result of Defendants' unlawful debt collection of an alleged balance due for medical services, referred to in the Complaint as the "Debt" [Dkt. 1 ¶ 14].

2.  On or about April 22, 2016, Leavengood, Dauval, Boyle & Meyer, P.A. (hereinafter, "Undersigned Counsel") served, via process server, a Summons and a copy of the Complaint to LPS in compliance with Rule 4 of the Federal Rules of Civil Procedure [Dkt. 10]. Please see attached a true and correct copy of the signed Return of Service labeled as Exhibit "A."

3.  On or about June 22, 2016, Plaintiffs filed a *Motion for Clerk's Default* against LPS for failure to serve a responsive pleading as required by law.

4.  On or about June 23, 2016, the Clerk entered a Default against LPS [Dkt 19]. Please see attached a true and correct copy of the *Entry of Default* labeled as Exhibit "B."

## MEMORANDUM OF LAW

**I.    LIABILITY**

5.  Pursuant to Federal Rule of Civil Procedure 55(b)(2), a district court may enter a default against a properly-served defendant who fails to defend or otherwise appear. *See Direct TV, Inc. v. Griffin*, 290 F. Supp.2d 1340, 1343 (M.D. Fla. 2003).

6.  While entry of a default by the Clerk—in and of itself—does not warrant the Court entering a default judgment, the Court may enter a default once the Court is satisfied that a sufficient basis exists in the pleadings for the judgment to be entered. *See Tyco Fire & Sec. LLC v. Alcocer*, 218 F.App'x 860, 863 (11th Cir. 2007) (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975)).

7.      A default judgment effectively establishes a plaintiff's well-plead allegations as fact. *Id*.

**A.     FCCPA**

8.      The FCCPA prohibits LPS from collecting the Debt from Plaintiffs through means which can reasonably be expected to abuse or harass Plaintiffs, prohibits LPS from attempting to collect the Debt with knowledge that the Debt is not legitimate or asserting the existence of the legal right with knowledge that the right does not exist, and prohibits LPS from intentionally and repeatedly communicating with Plaintiffs after receiving notice that legal counsel represented Plaintiffs with respect to the Debt.  Fla. Stat. §§559.72(7), (9), and (18).

9.      Additionally, the FCCPA permits "on behalf of" liability under the FCCPA's broad definition of "communication."  *See Mangiaracina v. Orange Lake Country Club, Inc.*, 2015 WL 685778 (M.D. Fla. Feb. 18, 2015) citing *Kelliher v. Target Nat'l Bank*, 826 F.Supp.2d 1324, 1329-20 (M.D. Fla. 2011) (denying the defendant's motion to dismiss the plaintiff's Section 559.72(18) claim where the plaintiff alleged that the defendant used a third party to send debt collection communications to the plaintiff despite knowing that the plaintiff was represented by counsel, because such actions constituted indirect communications).[1]

---

[1] "Defendants' argument appears to be premised on the fact that Part VI of Chapter 559 does not expressly provide for 'on behalf of' liability. Nothing in the statute, however, *prohibits* 'on behalf of' liability. Rather, Sections 559.72(7) and 559.72(18) simply provide that, in collecting consumer debts, no person shall:

(7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

(18) Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication. Fla. Stat. § 559.72." *Mangiaracina v. Orange Lake Country Club, Inc.*, 2015 WL 685778 (M.D. Fla. Feb. 18, 2015).

3

10. Here, Plaintiffs allege LPS collected the Debt from Plaintiffs using abusive and harassing means via repeated calls to Plaintiffs' cellular telephones despite never possessing Plaintiffs' consent to do so and despite Plaintiffs' repeated cease and desist demands. Further, ELA, on LPS's behalf—and with its consent, knowledge and approval—continued to attempt to collect the Debt by repeatedly calling Plaintiffs' cellular telephones without their consent and after repeated cease and desist demands. Defendants never obtained Plaintiffs' prior express consent to make calls to Plaintiffs' cellular telephones [Dkt. 1 ¶¶ 24, 27], as Plaintiff Castro incurred the Debt [Dkt. 1 ¶ 28], and Plaintiff Tosto never incurred the Debt and never provided his contact information to any of the Defendants [Dkt. 1 ¶¶ 26, 29].

11. Specifically, despite lacking Plaintiffs' prior express consent, Plaintiffs allege that LPS made *at least* five (5) calls to Plaintiffs' cellular telephones [Dkt. 1 ¶¶ 32, 34, 37, 39, 42] and ELA made *at least* twenty (20) calls to Plaintiffs' cellular telephones on LPS's behalf [Dkt. 1 ¶¶ 68, 70, 73, 75, 79, 82, 85, 98, 101, 104, 107, 110, 115, 119, 122, 125, 128, 131, 134].

12. Further, ELA, on LPS's behalf—and with LPS's consent, knowledge, and approval—made *at least* nineteen (19) of the above-referenced calls to Plaintiffs' cellular telephones after both Plaintiffs demanded LPS and its agents cease calling Plaintiffs' cellular telephones.

13. Even further, ELA, on LPS's behalf—and with LPS's consent, knowledge, and approval—placed *at least* seven (7) of the above-referenced calls to Plaintiff Castro's cellular telephone despite possessing actual knowledge of Plaintiffs legal representation with respect to the Debt [Dkt. 1 ¶¶ 157, 180, 190].

14. Additionally, LPS implied it intended to take legal action against Plaintiff Castro if she refused to pay the alleged balance due on the Debt and threatened Plaintiff Castro that LPS would implement "any form of recourse at the end of the business day" [Dkt. 1 ¶ 41].

15. Pursuant to Florida law, LPS could not take legal action to collect the Debt as the statute of limitations expired pursuant to Florida Statutes, Section 95.11(2)[2] because the alleged Debt was in default prior to May 6, 2010.

16. Moreover, by implying its intention to take legal action against Plaintiff Castro if she refused to comply with LPS's legal Debt collection attempts despite LPS's inability to sue Plaintiffs for the Debt or take legal action to collect the Debt in a Florida Court, LPS consciously and knowingly gave the impression that LPS could legally enforce the Debt, when LPS knew it could not.

17. Lastly, by intentionally and repeatedly communicating directly with Plaintiff Castro *at least* seven (7) times and indirectly via its agent ELA *at least* twenty (20) times after receiving actual notice of legal counsel's representation of Plaintiffs with respect to the Debt via Undersigned Counsel's faxes of representation, LPS violated Florida Statues, Section 559.57(18).

**B.    FDCPA**

18. Similar to the FCCPA, the FDCPA prohibits LPS from communicating with Plaintiffs despite possessing knowledge that legal counsel represented Plaintiffs with respect to the Debt and possessing knowledge of legal counsel's contact information, prohibits LPS from engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiffs in connection with the collection of the Debt, and prohibits LPS from using false, deceptive, or

---

[2] Actions other than for recover of real property shall be commenced within five (5) years of a legal or equitable action on a contract, obligation, or liability founded on a written instrument. Fla. Stat. § 95.11(2)(b).

5

misleading representations or means in connection with the collection of the Debt. 15 U.S.C. §§ 1692 c(a)(2), d, d(6), e, e(2)(A), and e(10).

19.   Here, as referenced above, LPS directly called Plaintiff Castro's Cellular Telephone *at least* seven (7) times after LPS possessed actual knowledge of legal counsel's representation of Plaintiff Castro with respect to the Debt.

20.   Additionally, LPS implied it intended to take legal action against Plaintiff Castro if she refused to pay the alleged balance due on the Debt and threatened Plaintiff Castro that LPS would implement "any form of recourse at the end of the business day" [Dkt. 1 ¶ 41].

21.   Pursuant to Florida law, LPS could not take legal action to collect the Debt as the statute of limitations expired pursuant to Florida Statutes, Section 95.11(2)[3] because the alleged Debt was in default prior to May 6, 2010.

22.   Moreover, by implying its intention to take legal action against Plaintiff Castro if she refused to comply with LPS's legal Debt collection attempts despite LPS's inability to sue Plaintiffs for the Debt or take legal action to collect the Debt in a Florida Court, LPS consciously and knowingly gave the impression that LPS could legally enforce the Debt, when LPS knew it could not.

23.   Lastly, by intentionally and repeatedly communicating directly with Plaintiff Castro *at least* seven (7) times and indirectly via its agent ELA *at least* twenty (20) times after receiving actual notice of legal counsel's representation of Plaintiffs with respect to the Debt via Undersigned Counsel's faxes of representation, LPS violated 15 United States Code, Section 1692c(a)(2).

---

[3] Actions other than for recover of real property shall be commenced within five (5) years of a legal or equitable action on a contract, obligation, or liability founded on a written instrument. Fla. Stat. § 95.11(2)(b).

### C. TCPA

24. The TCPA prohibits LPS from making phone calls to Plaintiffs using an automatic dialing system (hereinafter, "ATDS"), predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV") without Plaintiffs' prior express consent. 47 U.S.C. § 227.

25. Additionally, under the TCPA, LPS is liable for all calls placed by ELA on LPS's behalf.[4] *Rules and Regulations Implementing the TCPA of 1991* (Jan. 4, 2008) (calls placed by a third party debt collector on behalf of that creditor are treated as if the creditor itself placed the call).

26. Here, Plaintiffs alleged that they each regularly used and carried a "Cellular Telephone" ending in -4836 for Plaintiff Castro and -7126 for Plaintiff Tosto [Dkt. 1 ¶ 21, Plaintiff Castro's Affidavit ¶ 4, Plaintiff Tosto's Affidavit ¶ 4].

27. Plaintiffs further alleged that Defendants never obtained Plaintiffs' prior express consent to make calls to Plaintiffs' cellular telephones. Specifically, Plaintiff Castro incurred the Debt and Plaintiff Castro did not maintain any connection with Plaintiff Tosto when she allegedly incurred the Debt, and Plaintiff Tosto never provided his contact information to any of the Defendants [Dkt. 1 ¶¶ 24, 26, 27, 29].

---

[4] *Rules and Regulations Implementing the TCPA of 1991* (Jan. 4, 2008) (calls placed by a third party debt collector on behalf of that creditor are treated as if the creditor itself placed the call); *see also Federal Communications Commission Declaratory Ruling* I*n the Matter of the Joint Petition Filed by Dish Network, LLC et al.*, 28 F.C.C.R. 6574, 28 FCC Rcd. 6574 (May 9, 2013) ("[c]onstruing the TCPA prohibitions contained in section 227(b) to incorporate agency principles is also consistent with our administrative precedent. Addressing section 227(b) prohibitions in 2008, the Commission clarified that autodialed debt collection calls by third-party debt collectors to wireless telephone numbers would be treated as having been made with the called party's express consent, if the called party had provided the creditor with the wireless number during the transaction that resulted in the debt. At the same time, we stressed that the "creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third-party collector on behalf of that creditor are treated as if the creditor itself placed the call.") (citing *ACA International Ruling*, 23 FCC Rcd at 564-565, ¶¶ 9-10).

28. Despite lacking Plaintiffs' prior express consent, Plaintiffs allege that LPS made *at least* five (5) calls to Plaintiffs' cellular telephones [Dkt. 1 ¶¶ 32, 34, 37, 39, 42] and that ELA made *at least* twenty (20) calls to Plaintiffs' cellular telephones on LPS's behalf [Dkt. 1 ¶¶ 68, 70, 73, 75, 79, 82, 85, 98, 101, 104, 107, 110, 115, 119, 122, 125, 128, 131, 134].

29. Plaintiffs further alleged that LPS and ELA—on LPS's behalf—made all of the above-referenced calls to Plaintiffs' cellular telephones using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

30. Further, ELA, on LPS's behalf—and with LPS's consent, knowledge, and approval—made *at least* nineteen (19) of the above-referenced calls to Plaintiffs' cellular telephones after both Plaintiffs revoked any alleged consent asserted by Defendants to call Plaintiffs' cellular telephones.

31. As a result of LPS's repeated calls to Plaintiffs' cellular telephones using an ATDS, a PTDS, or an APV—without Plaintiffs' prior express consent—LPS violated 47 United States Code, Section 227.

32. Further, as a result of ELA's repeated calls to Plaintiffs' cellular telephones using an ATDS, a PTDS, or an APV—without Plaintiffs' prior express consent—and on LPS's behalf, LPS violated 47 United States Code, Section 227.

**II.   DAMAGES**

33. The Court may find that an evidentiary hearing is not required when all essential evidence is already of record. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1231-32 n.13 (11th Cir. 2005); *see also S.E.C. v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981) (concluding, "Rule 55(b)(2) does not require the district court to hold either an evidentiary hearing or oral argument on a motion for a default judgment") (citing *Thomas v. United States*, 531 F.2d 746, 748

(5th Cir. 1976) ("Taxpayers'' first contention that the district court should have held an evidentiary hearing and/or oral argument on the motion is without merit. All the essential facts were of record")); *KPS & Assocs. v. Designs by FMV, Inc.*, 318 F.3d 1, 21 (1st Cir. 2003).

34. Further, no hearing on the amount of damages is required in this case, as the damages sought by Plaintiffs are capable of accurate and ready mathematical computation or ascertainment from Plaintiffs' Complaint and related exhibits, in addition to Plaintiff Castro's and Plaintiff Tosto's Affidavits. *Cf. S.E.C. v. Symth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

35. Pursuant to Section 559.77, Florida Statutes, Plaintiffs are each entitled to up to $1,000.00 statutory damages. Fla. Stat. § 559.77(2).

36. Similarly, pursuant to 15 United States Code, Section 1692k, Plaintiffs are each entitled to up to $1,000.000 statutory damages. 15 U.S.C. § 1692k(a)(2)(A).

37. Plaintiffs plead entitlement to $1,000.00 statutory damages pursuant to Section 559.77, Florida Statutes [Dkt. 1 ¶¶ 140, 147, 161, 170, and p. 30-31], plead entitlement to $1,000.00 statutory damages pursuant to 15 United States Code, Section 1692k, and the Court may award maximum statutory damages upon a plaintiff's motion for default judgment concerning violations of the FCCPA and FDCPA. *See Barker v. Tomlinson*, 2006 WL 1679645, No. 8-05-cv-1390-T-27EAJ (M.D. Fla. 2006) (awarding $1,000.00 to plaintiff for frequent harassment violations of the FCCPA committed by defendant and awarding $1,000.00 to plaintiff for frequent harassment violation of the FDCPA committed by defendant); *Lehr v. Secure Capital Management, Inc.*, 2014 WL 5810487, No. 8:14-cv-2099-T-33MAP (M.D. Fla. 2014) and *Alecca v. AMG Managing Partners, LLC*, 2014 WL 2987702, No. 3:13-cv-163-J (M.D. Fla. 2014) (both awarding $1,000.00 to plaintiff for defendant's frequent telephonic debt collection attempts); Fla. Stat § 559.77(2).

9

38. Pursuant to Title 47 of the United States Code, Section 227(b)(3), Plaintiffs are entitled to $500.00 or actual damages, whichever is greater, for each telephone call made by an automatic telephone dialing system to Plaintiffs' cellular telephones in violation of 47 United States Code, Section 227 (hereinafter, the "TCPA") or the regulations proscribed under the TCPA.

39. Additionally, 47 United States Code, Section 227(b)(3) allows the trial court to increase the penalty up to three times (3x) for each telephone call made by an automatic telephone dialing system to Plaintiffs' cellular telephone, knowingly and willfully made in violation of the TCPA or the regulations proscribed under the TCPA.

40. The Court may find that treble damages are appropriate award for violations of the TCPA and may enter such award upon plaintiff's motion for final default judgment where plaintiff pled that defendant acted willfully. *See Arbelaez v. Capital Advance Solutions, LLC*, 2016 WL 2625020, No. 15-cv-23137-CIV-Williams (M.D. Fla. 2016) (citing *Tacroronte v. Tate & Kirlin Assocs.*, No. 6:13-cv-331-Orl37DAB (M.D. Fla. 2013))[5].

41. Plaintiffs plead entitlement to treble damages [Dkt. 1 ¶¶ 143 and p. 31] based on LPS—or parties acting on LPS's behalf—making *at least* twenty-seven (27) calls to Plaintiffs' cellular telephones in an attempt to collect the Debt despite lacking Plaintiff's prior express consent. LPS's and ELA's repeated disregard for Plaintiffs' and counsel's attempts to demand calls to Plaintiffs' cellular telephones cease demonstrates a willful and intentional disregard for Plaintiffs' consumer rights. Therefore, Plaintiffs are entitled to receive up to $1,500.00 per willful call totaling $40,500.00, plus interest thereon.

---

[5] The Court in *Arbelaez v. Capital Advance Solutions, LLC*, No. 15-cv-23137-CIV-Williams (M.D. Fla. 2016) and *Tacroronte v. Tate & Kirlin* Assocs., No. 6:13-cv-331-Orl37DAB (M.D. Fla. 2013) both awarded "$11,000, representing '$500 for the first call and $1,500 each for seven additional willful telephone calls,' to be an appropriate award in light of the defendant's willful or knowing failure to comply with the TCPA."

42.     Further, pursuant to Section 559.77(2), Florida Statutes, Plaintiffs are entitled to actual damages.

43.     Plaintiffs plead entitlement to actual damages. Plaintiffs suffered stress,[6] anxiety, loss of sleep, and deterioration of relationships, both personal and professional, as a result of LPS's and ELA's repeated attempts to collect the alleged debt, despite lacking Plaintiffs' prior express consent to call their cellular telephones in an attempt to collect the Debt and despite Plaintiffs revoking any alleged consent.

44.     In a similar case, both procedurally and factually, the U.S. District Court for the Middle District of Florida awarded $10,000.00 in actual damages for violations of the FCCPA, $10,000.00 in actual damages for violations of the FDCPA, and $10,000.00 in punitive damages in its Report and Recommendation on Plaintiff's Motion for Final Default Judgment.[7] *Barker v. Tomlinson* (M.D. Fla. 2006).

   a.     In *Barker*, the defendant placed numerous calls to the plaintiff, sent plaintiff collection letters and facsimile messages, and threatened plaintiff with arrest all while attempting to collect a consumer debt, causing plaintiff to experience fear, anxiety, embarrassment, and emotional distress. *Id.* at *1-3.

---

[6] "A consumer who has suffered emotional distress has suffered 'actual damage,' even if the emotional distress was not severe." *Edeh v. Midland Credit Mgmt., Inc.,* 2010 U.S. Dist. LEXIS 103888 (D.Minn. Sept. 29, 2010).

[7] Both acts generally apply to the same types of conduct, and Florida courts must give great weight to federal interpretations of the FDCPA when interpreting and applying the FDCPA." *Read v. MFP, Inc.*, 85 So.3d 1151, 1153 (Fla. 2nd DCA 2012). Similarly, the FCCPA "is to be construed in a manner that is protective of the consumer." *Laughlin v. Household Bank, LTD.*, 969 So.2d 509, 513 (Fla. 1st DCA 2007). In fact, the FCCPA "further defined and protected an individual's right of privacy" in addition to the protections of the FDCPA. *Id.* at 512. Importantly, the FCCPA is "in addition to the requirements and regulations of the [FDCPA]. In the event of any inconsistency between any provision of [the FCCPA] and the [FDCPA], the provision which is more protective of the consumer or debtor shall prevail. Fla. Stat., § 559.552. Finally, in ultimately determining a consumer's civil remedies under the FCCPA, "due consideration and great weight shall be given to the interpretations of…the federal counts related to the [FDCPA]." Fla. Stat., § 559.77(5) (2012).

      b.    Similar to the present matter, the defendant in *Barker* failed to respond, and the plaintiff subsequently filed a Motion for Final Default Judgment, which requested statutory damages in the amount of $2,000.00 and actual damages—resulting from fear, anxiety, embarrassment, and emotional distress—in the amount of $10,000.00 to $15,000.00. *Id.* at *3.

      c.    The court in *Barker* granted the plaintiff's requests, awarding $2,000.00 in statutory damages, $20,000.00 in actual damages, $10,000.00 in punitive damages, plus reasonable attorneys' fees and costs. *Id* at *4.

45.    Furthermore, in another similar case, both procedurally and factually, a U.S. District Court awarded $73,000.00 in actual damages in its Report and Recommendation on Plaintiff's Motion for Default Judgment. *Hunter v. Oasis Financial Solutions*, 2010 U.S. Dist. LEXIS 142175 (S.D. Cal. 2010).

      a.    In *Hunter*, the defendant placed numerous calls to the plaintiff, threatened him with arrest, failed to send verification of the debt, and continued to contact him after he retained legal counsel, all while attempting to collect a consumer debt. *Id.* at 1-2.

      b.    Similar to the present matter, the defendant in *Hunter* failed to respond, and the plaintiff subsequently filed a Motion for Final Default Judgment, which requested statutory damages in the amount of $2,000.00 and actual damages— resulting from humiliation, anger, anxiety, emotional distress, fear, frustration[,] and embarrassment—in the amount of $73,000.00. *Id.* at 2.

      c.    The court in *Hunter* granted the plaintiff's requests, awarding $75,000.00 in statutory and actual damages, plus reasonable attorneys' fees and costs, and stated:

> [A] grant of default judgment is appropriate in this case. First, a strong possibility exists that [the plaintiff] will be

> prejudiced if he is unable to seek judgment, as this suit is his only means of recourse against [the defendant] for its conduct. Further, if [the plaintiff's] motion is not granted, [the defendant] successfully defends against suit without ever appearing or expending any resources. That inequitable result, in light of [the defendant's] alleged conduct, will both prejudice [the plaintiff] and subvert the purpose of both statutory schemes.

*Id.*

46. Using the rationale that was the basis for awarding actual damages to the plaintiff in *Barker* and *Hunter*, Plaintiffs should be awarded $5,000.00 actual damages[8] pursuant to Section 559.77, Florida Statutes. *See Hunter*, 2010 U.S. Dist. LEXIS 142175; *Hartung v. J.D. Byrider*, 2009 U.S. Dist. LEXIS 54415 (E.D. Cal. 2009) (awarding $25,000 in actual damages for, among other things, tenseness, headaches, nervousness, fear, unhappiness, loss of sleep, loss of enjoyment of life, humiliation, and extreme emotional distress as a result of abusive debt collection behavior).

47. Furthermore, pursuant to Florida Statutes, Section 559.77 and 15 United States Code, Section 1692k, Plaintiffs are entitled to reasonable attorneys' fees and costs. Fla. Stat. § 559.77(2), 15 U.S.C. § 1692k.

48. Plaintiffs are entitled to reimbursement of reasonable attorneys' fees and costs in the amount of $4,204.00, plus interest thereon.

49. Also, contemporaneously herewith, the Undersigned Counsel files its Affidavit Supporting Proof of Claim of Aaron M. Swift as to Attorneys' Fees and Costs, testifying to the accuracy of the attorneys' fees and costs set forth herein.

50. Also contemporaneously herewith, Plaintiffs each file their Affidavit in Proof of Claim testifying to the accuracy of the foregoing amounts and in support of this Motion.

---

[8] *See Goodin v. Bank of America, N.A.*, 2015 WL 3866872. (M.D. Fla. June 23, 2015) (awarding $50,000.00 in actual damages to each Plaintiff where Plaintiffs' suffered over two and a half years of stress, anxiety, and sleeplessness as a result of the defendant's misrepresentations regarding the amount of debt owed).

13

51.     Plaintiffs provided notice of this Motion to Defendant by service to LPS as set forth in the Certificate of Service below.

52.     To the extent the Court is not inclined to award the actual damages sought, Plaintiffs requests entry of judgment as to liability, $44,500.00 statutory damages, and $4,204.00 in attorneys' fees and costs. Plaintiffs would then request a hearing to determine actual damages pursuant to Federal Rules of Civil Procedure, Rule 55(b)(2)(B).

**WHEREFORE**, Plaintiffs request this Court to enter a judgment in their favor against LPS totaling $53,704.00, which includes statutory damages, actual damages, attorneys' fees, costs, interest, to reserve jurisdiction for purposes of issuing further orders allowing Plaintiffs to collect their judgment, and for such other relief as this Court deems proper.

Dated: October 10, 2016

                         Respectfully submitted,

                         **LEAVENLAW**

                         /s/ *Aaron M. Swift*
                         **Ian R. Leavengood, Esq., FBN 010167**
                         **Aaron M. Swift, Esq., FBN 093088**
                         **Gregory H. Lercher, Esq., FBN 106991**
                         **Sara J. Weiss, Esq., FBN 115637**
                         Northeast Professional Center
                         3900 First Street North, Suite 100
                         St. Petersburg, FL 33703
                         Phone: (727) 327-3328
                         Fax: (727) 327-3305
                         consumerservice@leavenlaw.com
                         aswift@leavenlaw.com
                         glercher@leavenlaw.com
                         sweiss@leavenlaw.com
                         *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 10, 2016, a true and correct copy of the above and foregoing *Motion for Entry of Default* has been furnished electronically via CM/ECF and/or by U.S. Mail to the following:

Joshua H. Threadcraft, Esq.
Burr Forman, LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
*Attorneys for Capital One Services, LLC
d/b/a Capital One Bank (USA), N.A.*

Legal Prevention Services, Inc.
485 Cayuga Road Hangar Bay 4-2
Cheektowaga, NY 14225

Walden Asset Management, LLC
485 Cayuga Street
Buffalo, NY 14225

Evans Law Associates, P.C.
5355 Main Street
Williamsville, NY 14221
jason@evanslawassociates.com

/s/ *Aaron M. Swift*
Attorney